# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL ANTHONY BARRIOS, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:20-cv-00516 |
| THE COUNTY OF HOUSTON, TENNESSEE; THE CITY OF ERIN, TENNESSEE; ETHAN MYRICK; TARA WALLACE; JEFFREY BATES; and JERRY WENINGER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Michael Anthony Barrios brings this case under 42 U.S.C. § 1983. He alleges that, on the night of August 13, 2019, City of Erin Police Officer Ethan Myrick stopped him without cause and used excessive force in violation of the Fourth Amendment of the Constitution. He also alleges that Houston County emergency medical technicians ("EMTs") Jerry Weninger and Jeffrey Bates failed to provide adequate medical care in violation of the Eighth Amendment of the Constitution and were negligent in doing so.

Pending before the Court are two ripe Motions to Dismiss: one by Houston County and Weninger (Doc. No. 33), and one by Bates (Doc. Nos. 39). Each motion seeks dismissal of Count V, the negligence medical care claim, based upon immunity under the Tennessee Governmental Tort Liability Act ("TGTLA"); and (2) the pre-suit filing requirements under the Tennessee Health Care Liability Act ("THCLA"). For the following reasons, the motions will be granted in part and denied in part.

## I.

The Court accepts as true Barrios' allegations in the First Amended Complaint. (Doc. No. 15).

While staying at the Deerfield Inn in Erin, Tennessee Barrios' phone ran out of battery power. (Doc. No. 15). He went to his car to use its charger. (Id.). While in his car, Officer Myrick pulled up behind him. (Id. ¶ 15). Suspecting drug activity, Myrick asked for Barrios' room number and name. (Id. ¶¶ 17–19). After Barrios responded, Myrick asked Barrios to step out of the vehicle for a "pat down." (Id. ¶¶ 20–21). He complied. (Id.). The pat down yielded nothing but Myrick requested that Barrios keep his hands on the vehicle. (Id. ¶ 22).

Barrios became scared because he had prior bad interactions with law enforcement, so he ran. (Id. ¶ 23). Myrick chased Barrios and eventually deployed his taser into Barrios' back. (Id. ¶ 24). He fell to the ground. (Id. ¶ 25). Myrick placed Barrios under arrest and lowered his body onto Barrios to restrain him. (Id. ¶ 26). As Myrick did so, Barrios felt a pop in his right hip and began to scream in agony. (Id. ¶ 27). Myrick told Barrios that he was "fine," placed him in handcuffs, and dragged him back to his vehicle. (Id. ¶¶ 29, 30).

Bates and Weninger then arrived on scene. (Id. ¶¶ 33–34, 87–97). Myrick told them that Barrios had fled and fell. (Id. ¶ 35). Bates proceeded to taunt Barrios, calling him a "runner", and repeatedly telling him to "get up." (Id. ¶¶ 38–39). Bates also moved Barrios' leg back and forth, causing it to make a cracking sound. (Id. ¶ 40). Bates told Myrick that Barrios was not hurt but the only way to confirm his condition would be through an x-ray. (Id. ¶¶ 41, 47). Myrick refused to take Barrios to the hospital. (Id. ¶ 46). Bates and Weninger left the scene without providing medical care. (Id.). Myrick took Barrios to the Houston County Jail, where he remained for twelve hours before receiving a medical examination for what turned out to be a broken hip. (Id. ¶¶ 29, 47–49, 56).

While he was recovering at the hospital, Assistant District Attorney Talmage Woodall visited and allegedly forced Barrios to sign an agreement to release him on his own recognizance. (Id. ¶¶ 65, 67). The Houston County General Sessions Court entered an Order releasing Barrios and set a follow-up court date for September 3, 2018 (Id. ¶ 68) but he did not attend the hearing. (Id. ¶ 69). He was subsequently taken into custody at the Houston County Jail, where his physical condition worsened. (Id. ¶ 71).

On June 19, 2020, Barrios filed a pro se complaint. At that time, Barrios was recovering from emergency surgery to repair his broken hip. The Court appointed counsel on July 1, 2020, but counsel had difficulty contacting Barrios. (Doc. Nos. 7, 9, 11, 13). Barrios alleges that the lack of communication was due to his substance abuse and mental health issues, and loss of his home. (Doc. Nos. 57, 61).

## II.

To survive Defendants' motions to dismiss under Rule 12(b)(6), Barrios' "complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court accepts all of the factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The Court determines only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)).

Defendants also request "judgment of dismissal on the pleadings." (Doc. No. 33 at 1; see also Doc. No. 39 at 1). The standard for motions for judgment on the pleadings is the same as the

3

one for motions brought under Rule 12(b)(6). See Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016); see also Kelley v. Apria Healthcare, LLC, 232 F. Supp. 3d 983, 988–89 (ED. Tenn. 2017).

### III.

The Court turns first to the issue of immunity. Tenn. Code Ann. § 29-20-310(b) provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the government entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner." Tenn. Code Ann. § 29-20-310(b). Barrios argues that EMTs are health care practitioners for whom immunity does not attach. (Doc. No. 63 at 4). He relies upon Mooney v. Sneed, where the Tennessee Supreme Court held that "EMTs are clearly health care practitioners for purposes of the [TGTLA]." S.W.3d 3d 304, 307 (Tenn. 2000). However, Mooney is no longer controlling law because, the following year, the Tennessee legislature defined healthcare practitioners as "physicians licensed under title 63, chapter 6, and nurses licensed under title 63, chapter 7." Tenn. Code Ann. § 29-20-310(b); see also 2001 Tenn. Pub. Acts. 419; 2001 Tenn. Pub. Ch. 419. In Tennessee licensed physicians must be medical school graduates, who have at least six years' experience practicing medicine or surgery, and have a medical license. Tenn. Code Ann. §§ 63-6-101, 63-6-201. Similarly, Tennessee law defines nurses as those who supervise patients "requiring skill and observation" of symptoms and reactions to promote, restore, and maintain health or prevent illness; and have a nursing license. Tenn. Code Ann. §§ 63-7-104, 105. There are no allegations in the Amended Complaint that either Bates or Weninger satisfy the legal definition of physician or nurse. EMTs are not "health care practitioners" for whom immunity is automatically removed under the TGTLA.

Here, the TGTLA actually removes immunity for Bates and Weninger. Under Tenn. Code Ann. § 29-20-205(2), the TGTLA "removes immunity for governmental entities, and by extension

4

provides it to employees, for an injury "proximately caused by" an employee's negligence conduct – *except* when the negligent conduct causes an injury that "arises out of" civil rights, including claims invoking 42 U.S.C. § 1983. Colson v. City of Alcoa, 458 F. Supp. 3d 887, 937 (E.D. Tenn. 2020) (citing Tenn. Code Ann. § 29-20-205(2) (emphasis in original)). In such instances, government employees "remain subject to liability in their individual capacities for negligence." Id.; see also Baker v. Snyder, No. 1:05-cv-152, 2006 WL 2645163, at *10 (E.D. Tenn. Sept. 14, 2006) (noting that a government entity's employees "can be liable in their individual capacities"); Montgomery v. Whidbee, No. 3:19-cv-00747, 2021 WL 780730, at *2 (M.D. Tenn. Mar. 1, 2021) (same).

In Colson v. City of Alcoa, plaintiff brought a negligence claim against three government employees alleging, in part, a failure to "provide her with adequate medical care while detained" in violation of the Constitution. 458 F. Supp. 3d at 937. The employees argued that they were entitled to TGTLA immunity, but the court rejected their argument because plaintiff's "negligence claims [arose] out of the same facts and circumstances as her civil rights claims under § 1983." Id. at 936–37. Specifically, the court found that plaintiff's negligence claim was "clearly based on the same facts and circumstances as her claims of excessive force and deliberate indifference" to providing necessary medical care against the same defendants under § 1983. Id.

The same rational applies here. Barrios' negligence claim alleges that Bates and Weninger "had a statutory duty to provide emergency medical services or "services utilized in responding to the perceived need for immediate medical care in order to prevent loss of life or aggravation of illness or injury." (Am. Compl. ¶ 136 (citing Tenn. Code Ann. §§ 68-140-509(a), 68-140-502(11)). In Count II he alleges deliberate indifference in violation of the Eighth Amendment, because Weninger and Bates "demonstrated a deliberate indifference to [his] serious medical needs" and

5

shirked the same duty to provide medical care as the duty referenced in Count V. (Id. ¶¶ 90–91, 93). Barrios' negligence claim therefore arises out "of the same facts and circumstances" as his civil rights claim under § 1983. Colson, 458 F. Supp. 3d at 937. Accordingly, Weninger and Bates "are not immune from suit in their individual capacity," and Barrios' negligence claims against them arising out of those facts may proceed as part of his civil rights claim, but not as a separate claim for relief. Id.; see also Montgomery, 2021 WL 780730, at *6.

## IV.

Under the THCLA, a plaintiff "asserting a potential claim for health care liability" must satisfy several filing requirements, including: (1) "written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint"; (2) a certificate of mailing along with "an affidavit of the party mailing the notice establishing that the specified notice was timely mailed"; and (3) a certificate of good faith that the plaintiff has consulted with an expert who believes that there is a good faith basis to maintain the action. Tenn. Code Ann. § 29-26-121(a)(1), (4); id. § 29-26-122(a)(1). The burden is on the plaintiff to demonstrate compliance with these requirements. See Barnwell, 2018 WL 1733311, at *3; see also Martin v. Rolling Hills Hosp., LLC, 600 S.W.3d 322, 344 (Tenn. 2020) (holding that the plaintiff must state in the pleadings that they have complied with the THCLA's filing requirements).

Barrios concedes that he failed to comply with each requirement; however, he argues that "extraordinary cause" excuses his noncompliance. (Doc. No. 63 at 5). Specifically, he argues that he filed his pro se complaint while recovering from serious injuries arising out of Defendants' failure to accommodate his medical needs. (Doc. No. 1, Compl.). The court need not determine if Barrios is correct because it is clear that he did obtain the required expert good faith certificate. Barrios argues that his failure is excused because Bates and Weninger's negligence "is so obvious

6

that even a layman could recognize it." (Doc. No. 63 at 8). The court rejects his argument. First, Barrios cites no legal authority for his argument. Second, construing his negligence claim liberally there are no allegations that Barrios' injury was "so obvious." Tennessee courts have described the common knowledge exception as being "as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence." <u>Graniger v. Methodist Hosp. Healthcare Sys., Inc.</u>, No. 02A01-9309-cv-00201, 1994 WL 496781, at *3 (Tenn. Ct. App., Sept. 9, 1994) (citing <u>Murphy v. Schwartz</u>, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986)). Here, Barrios' broken bones were not visibly apparent to Bates or Weninger. This is why, as Barrios alleges, Bates and Weninger noted the only way to confirm Barrios' condition would be through an x-ray. (Am. Compl. ¶¶ 41, 47).

Barrios was not excused from filing an expert certificate of good faith. <u>See</u> Tenn. Code Ann. § 29-26-122(a)(1). To the extent Barrios' negligence claim is brought under the THCLA, it will be dismissed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE